UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

W.A. GRIFFIN, MD                               )
                                               )
                                               )
          Plaintiff,                           )
                                               )  8:16-CV-1243-T-27AEP
          vs.                                  )
                                               )
PUBLIX SUPER MARKETS, INC.                     )
                                               )
                                               )
                                               )
                                               )
                                               )
          Defendant,                           )

---

## COMPLAINT

---

W.A. GRIFFIN, M.D.
PRO SE
500 PEACHTREE STREET N.E. SUITE 1490
ATLANTA, GEORGIA 30308
(404)- 523-4223 wagriffinerisa@hotmail.com

## INTRODUCTION

PLAINTIFF W. A. Griffin, M.D.  alleges against Defendant as follows:

## I. JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant 28. U.S.C. 1331, because the action arises under the laws of the United States, pursuant to 29 U.S.C 1332(e)(1), because claimant seeks to enforce rights under the Employment Retirement Income Security Act  ("ERISA").


2.     This Court is the proper venue for this action pursuant to 28 U.S.C. 1319(b) because this is the judicial district in which the Defendant resides and administers the plan at issue in this lawsuit, and because the Defendant conducted and continue to conduct a substantial amount of business in this Judicial District;

## II. THE PARTIES

### A.   PLAINTIFF

3.   W. A. Griffin, M.D.  is a resident of Fulton County, Georgia. Plaintiff, as a condition of service, requires patients to assign his or her health insurance benefits and rights to the Plaintiff. Additionally, patients sign a Blue Cross specific designated authorized representative form. As such,

Plaintiff is the assignee and designated authorized representative for the members in this complaint.

4. Plaintiff received an assignment of benefits and rights for the claims at issue in this litigation. Plaintiff has derivative standing to pursue the claims for relief in this Complaint as an assignee of the member's benefits under the health plan, as a party who suffered injury in fact and loss of money and/or property as a result of the Defendant's conduct, and as a party who rendered services to the plan member with prior knowledge by the Defendant without being properly compensated for the fair market value of those rendered services. Healthcare providers to whom a beneficiary has assigned a claim in exchange for healthcare have the same rights as the original assignor. See Tango Transpo.v. Healthcare Fin. Services. LLC, 322 F. 3d 888, 891 (5th Cir. 2003)

B.    Publix Super Markets, Inc. / ERISA Plan Defendant

5.    Plaintiff is informed and believes that Defendant Publix Super Markets, Inc. (hereafter Publix) is a domestic corporation headquartered in Florida authorized to conduct business in the State of Georgia. The corporate headquarters is located at 3500 Publix Corporate Parkway Lakeland, Florida 33811.  Defendant Publix can be served with process

through its registered agent at Corporate Creations Network Inc. located at 2985 Gordy Parkway, 1st Floor, Marietta, Georgia 30066.

6.      Publix is the plan administrator and sponsor of the present case. Plaintiff is informed and believes Publix's health plan is an ERISA plan, thus making them proper defendants pursuant to ERISA § 502(d), 29U.S.C.§ 1132(d), and liable for unpaid services and penalties.

7.      Upon information and belief Publix is the proper defendant in this lawsuit by their primary obligation to:

(1) To administer the Plan in accordance with its terms.

(2) To interpret the Plan, including the right to remedy possible ambiguities, inconsistencies or omissions.

(3) To decide disputes which may arise relative to a Plan Participant's rights.

(4) *To prescribe procedures for filing a claim for benefits and to review claim denials.*

(5) To keep and maintain the Plan documents and all other records pertaining to the Plan.

(6) To appoint a Claims Administrator to pay claims.

8.      Upon information and belief Publix has contractual arrangements with other companies to provide administrative services only for the Plan. Publix

filed Form 5500 with the IRS as the plan administrator and assumes all liability for plan operations.

9. Upon information and belief, Publix has delegated some parts of the plan administration to Blue Cross and is obligated to monitor all delegated operations. However, the fact pattern and facts in this case demonstrate that Publix failed to monitor delegated plan operations. As such, Publix is named in this lawsuit as the party exclusively liable for ERISA violations presented in this lawsuit.

10.   Plaintiff is a medical provider that brings this lawsuit against Publix because Publix, through its agents Blue Cross and Blue Shield of Florida (dba "Home Plan"), Blue Cross and Blue Shield of South Carolina, and Blue Cross and Blue Shield Healthcare Plan of Georgia ( dba "Host Plan") (collectively, "Blue Cross")   has failed to answer appeals, provide plan documents, and  properly honor its obligation to pay Plaintiff for medically necessary services that Plaintiff provided to a Publix  employees who received health benefits  administered  and funded by Publix.

### III. The Blue Card Network

11.   The key to understanding the evolution of this lawsuit is by unfolding the components and players involved in the Blue Card Program because the

claims and appeals at issue in the complaint were provided exclusively through the Blue Card program.

12.    Upon information and belief, the Blue Cross Blue Shield Association ("BCBSA") is the trade association for 39 independent, <u>locally</u> operated Blue Cross Blue Shield Companies. A strong, vibrant contractual relationship between each local company is governed by the bylaws of the association's mandatory participation in the Blue Card program.

13.    Upon information and belief each independent company regulates a certain jurisdiction or state and act on each other's behalf under assignments through Inter-Plan agreements that are incorporated into the administrative services agreements between the primary claims administrator or "Home Plan" and Plan Administrator.

14.    The "Home Plan" (Blue Cross and Blue Shield of Florida in this case) is always the Blue Cross company that signs the administrative service agreements with the plan administrator.

15.    Plaintiff is informed and believed that the Blue Card program is a national program that enables members of one BCBSA member company to obtain healthcare services while traveling or living in another BCBSA member company's service area. The Blue Card program links healthcare providers with BCBSA member companies across more than 200 countries

and territories worldwide, through a single electronic network for claims processing, appeals, and reimbursement.

16.    Upon information and belief the administrative service agreement between Publix and Blue Cross and Blue Shield of Florida  (dba "Home Plan) incorporates Inter-Plan Arrangements and/or amendments that has language *similar* to the following :

*Home Plan* has a variety of relationships with other Blue Cross and/or Blue Shield Licensees referred to generally as the "Inter-Plan Programs". Whenever members access healthcare services outside the geographic areas the claims for those services may be process though one of these Inter-Plan Programs and present to Home Plan for payment in accordance with the rules in the Inter-Plan programs policies then in effect.........this program allows Members to obtain services from providers that have contractual agreement (i.e., are "participating providers") with local Blue Cross and/or Blue Shield Licensee in another geographic area, as well as non-participating providers in some instances.

17.    Upon information and belief, all claims submissions and appeals *must* be submitted to the local plan under the Blue Card program. And, the Host plan will forward claims and appeals to the Home plan if necessary or communicate with the provider if an alternative appeal track is warranted.

18.    Upon information and belief The Host plan is almost always the exclusive contact between the member and the provider because the Blue Card program facilities the exchange of data between the Home  and Host plan.  The entire point of the program is to permit a *single*, contact for out of

area claims (like the one in this complaint) between out of area member and/or provider. An illustration of this process can be found on www. Bcbsga.com. All claims and appeal were at issue in this lawsuit were executed through this Blue Card Program. **(Exhibit A- Claims Flow through Blue Card).**

19. Upon information and belief, each Blue Cross administrative services agreement incorporates conformity clauses that permit each independent Blue Cross company to incorporate state insurance regulations into the plan. *Some* of these regulations are not preempted by ERISA. These state insurance regulations are carried out though the inter-plan program assignments that are the hallmark of the Blue Card program and/or BCBSA bylaws. For example, in this complaint, Blue Cross and Blue Shield of Georgia, through an assignment with Blue Cross and Blue Shield of Florida, is responsible for processing claims in Georgia in accordance with state insurance regulations that are not preempted by ERISA. This concept is critical because it ties into the Assignment of Benefits & Standing Sections below. The table below helps clarify these relationships:

| Plan Administrator | Primary Claims Administrator "Home Plan" Claims Fiduciary | Secondary Claim Administrator "Host Plan" |
|---|---|---|
| Publix | Blue Cross and Blue Shield of Florida | Blue Cross and Blue Shield of Georgia |
| | Role in this complaint<br><br>Primary ASA contract holder<br><br>Relayed Plan Benefits To BCBSGA<br><br>*Note: BCBS of South Carolina processes some claims for BCBS Florida* | Role in this complaint<br><br>Determined Allowable (UCR)<br><br>Accepted Claims<br><br>Accepted Appeals through Blue Card Program: P.O. Box 9907 Columbus, Georgia 31908<br><br>Answered Appeals and/or Forwarded Appeals to Home Plan |
| | | Upon Information and Belief: Inter-plan Assignee of Home Plan via Blue Card Program and/or BCBSA bylaws |
| | Actions of this claim administrator governed by Florida Insurance Code | Actions of this claim administrator governed by *Georgia* Insurance Code which regulates how this claims administrator accepts out of area claims with "participating provider" agreements/contracts and non-participating |
| | | Upon Information and Belief, All claims accepted by BCBSGA (even if they are self funded claims) must be handled in accordance with Georgia Insurance Code. This key point is critical because when BCBGA accepted the claim in Georgia, assignments are |

| | | mandated for non-participating providers under Georgia§ 33-24-54 |
|---|---|---|
| | | |

## IV. Other Relevant Points

20.    Upon information and belief, Publix provides healthcare benefits to members of the plan through a contractual relationship with Blue Cross, whereby Blue Cross acts as Publix's agent in administration of the health benefits, providing Publix employees access to Blue Cross's provider network and performing administrative services with regard to claims for health benefits filed by employees and their assignees.

21.    With regard to the provider network that Blue Cross makes available to Publix employees, Blue Cross enters into agreements with healthcare providers whereby the providers join its "provider network". The physicians that join a provider network agree upon reimbursement rates, which rates are typically discounted rate, compared to the providers' usual and customary rates. Such providers are known as "in-network" providers.

22.    Other physicians, like Plaintiff, do not enter into contracts with Blue Cross, and are entitled to receive reimbursement for their "out –of-network" provider services at the usual, customary, and reasonable charges

for the services rendered, less any co-payment, co-insurance, member out-of-pocket, or deductible amounts. (This amount is the "UCR rate").

23.   The claims submitted by Plaintiff to Blue Cross for pricing and payment were required to be paid at a rate referred to interchangeably and in the Defendant's own ERISA plan documents as the "Usual, Customary, and Reasonable" rate, the "Reasonable and Customary" amount, the "Reasonable Charge, the "Prevailing Rate,", the "Usual Fee," " Maximum Allowable" or similar phrase that, in the context of the health industry, means the same thing. The industry shorthand for these terms is "UCR".

24.   Plaintiff is informed and believes that Blue Cross' methodology and systems for determining UCR and paying out-of-network provider member claims is flawed, that Blue Cross improperly manipulates the data in the systems to calculate incorrect and inappropriately low amount in paying providers, and the methods for calculating incorrect and inappropriately low amount in paying providers, and the methods for calculating the UCR rates for non-contracted providers violates the members' policies and ERISA.

25.   Plaintiff's UCR charges in this complaint are comparable to the standard UCR based upon her annual, licensed subscription ( Fee Schedule Estimator, www.feeestimator.org) to provider UCR databases, other payors, and consumer reference sites such as www.fairhealth.org. The Fair Health

website permits consumers to find out UCR estimates for procedure codes in geographic areas across the country with a variety of online tools at no cost and without a registration.

26.    As the sponsor and administrator Publix supervises the operation of the benefit fund and makes benefit determinations and claim payment determinations through its agent, Blue Cross.

27.    By choice, W. A. Griffin is not a participating provider in Blue Cross networks.

28.    This litigation arises out of  Blue Cross' wrongful failure and refusal to reimburse Plaintiff at anything more than a dramatically reduced rate for medically necessary services that Plaintiff provided to a Publix employees.

29.    This litigation arises out of Blue Cross' negligent claim appeal procedures that failed to meet ERISA standards.

30.    This litigation arises out of  Publix's failure, through its agent, Blue Cross, to produce requested plan documents that are subjected to $110 penalty per day.

31.    The Publix agents are plan fiduciaries. As the plan administrator, Publix is liable for the actions of its agents *especially* because they directed Plaintiff to engage exclusively with their claim agent through the Blue Card program.

32.    Any attempt by the Defendant to purport that Plaintiff did not engage directly with them  in order to diminish liability is  null and void. Publix intentionally *instructs* authorized representative to engage with their claims administrators for claim submissions, appeals, and appeals-related document requests.

33.    As set forth below, Publix's persistent refusal, through its agent, Blue Cross, to appropriately pay for services, answer appeals, and provide plan documents has breached a myriad of legal obligations and violated federals. Accordingly, Plaintiff is entitled to the relief demanded in this Complaint.


## V. ASSIGNMENT AND STANDING

34.    Plaintiff has standing to pursue these claims as assignee of the patient benefits. Prior to receiving treatment, every patient of the Plaintiff signs as an "Legal Assignment of Benefits and Designation of Authorized Representative" form agreeing to, *inter alia*, assign his or her health insurance benefits, as well as broad array of related rights, to their provider, who is the Plaintiff in this case. Each assignment of benefits provides Plaintiff to be paid directly by the patient's insurance for the services provided to the patient, and authorized Plaintiff to obtain plan documents on

the patient's behalf and take all action necessary to pursue benefit claims on the patient's behalf.

35.     Plaintiff received an assignment of benefit and rights for every claim at issue in this litigation. Plaintiff maintains each patient's assignment of benefits as part of the patient record.

36. This written, legal assignment of benefits contained an exhaustive list of rights that the patient conveyed to Plaintiff. In relevant part, the form states:

If my/this current policy prohibits direct payment to doctor, I hereby also instruct and direct you to make out the check to me and **mail it to the** **above address** for the professional or medical expense benefits allowable, and otherwise payable to me under my current insurance policy as payment toward the total charges for the professional services.

**This is a direct assignment of my rights _and_ benefits under this policy** **and designation of authorized representative.**

This payment will not exceed my indebtedness to the above-mentioned assignee, and I have agreed to pay, in a current manner, any balance of said professional service charges over and above this insurance payment.
(Check each box and sign at the bottom)
☐A photocopy of this Assignment shall be considered as effective and valid as the original.
☐I hereby authorize the above named provider(s) to release all medical information necessary to process my claims under HIPPA to any insurance company, adjuster, or attorney involved in this case for the purpose of processing claims, claim appeals, grievances, and securing payment of benefits. I hereby authorize any plan administrator or fiduciary, insurer and my attorney to release to such provider(s) any and all plan documents, insurance policy and/or settlement information upon written request from such provider(s) in order to claim such medical

benefits, reimbursement or any applicable remedies. I authorize the use of this signature on all my insurance and/or employee health benefits claim submissions

This assignment of right and benefits is valid for my provider to stand in my shoes and pursue claims for benefits, statutory penalties, breach of fiduciary duty, any ERISA claim matter, and any state claim. The assignment is valid to sue employers, plan administrators, third party administrators,  and any entity related to the administration of my health benefit plan including the federal government, local government, non-ERISA plan and/or claims administrators.

☐I authorize the above name healthcare provider to deposit insurance checks made in my name.

☐I authorize the above named healthcare provider(s) to initiate a complaint to the Insurance Commissioner for any reason on my behalf.

☐I understand that I am financially responsible for all charges whether or not paid by insurance.

☐I understand and agree that I am responsible for full payment of the medical debt if my insurance company has refused to pay 100% of my benefits based on billed charges, within ninety (90) days of any and all appeals or request for information.

☐I understand that if my account is referred to an attorney or outside agency for collection, I will pay reasonable attorney's fees and collection expenses. All delinquent accounts bear interest at the legal rate.

☐I also agree that any fines levied against my insurance company will be paid to Intown Dermatology for acting as my personal representative.

☐In considering the amount of medical expenses to be incurred, I, the undersigned, have insurance and/or employee health care benefits coverage, and hereby assign and convey directly to the above name healthcare provider(s), as my designated Authorized Representative(s), all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from such provider(s), regardless of such provider's managed care network participation status. Unless revoked, this assignment is valid for **all administrative and judicial review under PPACA, ERISA,** Medicare and applicable federal and state laws.

37.     Based upon the course of dealings between Plaintiff and Publix's agent, Blue Cross, Plaintiff is informed and believes that no provision exist in the plan which preclude the assignment of claims which the insured gave to Plaintiff, and the Defendant has waived such provisions. This is because, throughout the entire administrative process of claims and appeals, Publix, though its agent, never referenced any anti-assignment provision of any plan, never refused to communicate  with Plaintiff based on any such anti-assignment, and never refused to pay any of Plaintiff's claims based on any such anti-assignment provisions.

38.     The ERISA regulations require Publix and/or the agents (i.e. plan fiduciaries), *inter alia*, to state (i) the specific reason or reasons for the adverse determination, and (ii) reference to the specific plan provisions on which the determination is based. 29 C.F.R. § 2560.503-1(g)(1). At no time during the administrative process did Publix, through its agents, ever state that the specific reason for the adverse benefit determination was due to an anti-assignment provision, nor did they reference a specific anti-assignment provision in any plan document.

39.     Moreover, the ERISA statue and regulations require Publix and other plan fiduciaries to provide relevant plan documents. 29 U.S.C. §

1104, 1024 and 1132; 29 C.F. R. § 560.503-1. At no time during the administrative process did Publix, though its agent, ever send any plan documents containing any anti-assignment provision to Plaintiff.

40.    On the contrary, throughout the entire administrative process, Publix, through its agent, engaged in regular interaction with Plaintiff prior to and after the claims were submitted without mentioning or invoking any matter regarding assignment. When Plaintiff's office staff have spoken to Blue Cross to verify benefits and eligibility for out of network services,  the agent at no time claimed the patient were not eligible to assign claims to Plaintiff and never informed Plaintiff of any such provisions of the plans. In fact, the fact pattern below will show that Publix, through their claims agent, had plenty of opportunity to notify Plaintiff of any such anti-assignment provisions.

41.    Therefore, to the extent any plan documents have any anti-assignment provisions, Publix, through its agent, has waived their right to assert such anti-assignment provisions as a defense in paying claim and penalties *especially* after Publix has clearly instructed Plaintiff to exclusively engaged with their claims administrators through the Blue Card program. Waiver applies only where a party voluntarily and intentionally relinquished a known right (as in *this* case). *Id.* (citing

*Dooley v. Weil* (*In re Garginkel*), 672 F.2d 1340, 1347 (11th Cir. 1982)).

Additionally, Plaintiff has found at least once case on Pacer.gov where

Publix was sued by a provider assignee without raising anti-assignment

defenses in *Delray Medical Center, Inc. v. Publix Super Markets, Inc.*

9:10-cv-80862-KLR Southern District court in Florida. Additionally,

Plaintiff called Del Ray Medical Center on 5/16/2016 to confirm that the

company did not obtain  special permission or written consent directly

from the plan administrator or Blue Cross for the assignment of benefit to

be valid. Just like Plaintiff, Del Ray *requires* their patient to complete

written assignment in the office that is kept on file and provided to the

insurance company during the claim and appeal process.

## VI. FACTS

42.   For example, patient B.A. presented to Plaintiff for medically necessary

surgery services on June 25, 2014. Plaintiff's office staff verified benefits

using 800 number on the back of the I.D. card to verify coverage for out of

network benefits. The claim file was mailed via Certified Particle No. 7014

0150 0000 2435 6301 and included a written legal assignment of benefit

form/designated authorized representative form, and a Blue Cross *specific*

designated  authorized representative form. The UCR charges totaled

$12,672.88.  Blue Cross and Blue Shield of Georgia received the claim file

on June 27, 2015. **( Exhibit B- Original Claim File & Return Receipt).**

43.     Six months passed and the member's claim was not processed.

Therefore, on December 19, 2014 Plaintiff sent a letter to Blue Cross

via Certified Particle No. <u>7014 0150 0000 2435 8404.</u> The letter strongly

urged Blue Cross to process the claim or Plaintiff would sue. **( Exhibit C-**

**Letter Sent To Blue Cross note: *claim file and exhibits not included*)**

44.   On January 29, 2015  Plaintiff called Blue Cross to check the status

of the claim and was advised that "claim will be sent to claims department

and processed in thirty days" (reference # 02150290220000, spoke with

Lakeeta @ 11:10 A.M.).

45.   On February 17, 2015 Plaintiff called Blue Cross to check the claim

status again and was advised " claim sent for processing on January 29,

 2015 (reference #02150470948200).

46.  On March 2, 2015 Plaintiff called Blue Cross a third time to check the

status of the claim and was advised that " the claim is in adjustment status.

I will request escalation. Give it another 10 to 14 days" (reference

#02150610387300, spoke with Virginia at 10:38 A.M.).

47. Finally, on March 16, 2015 Blue Cross processed the claim and did not obey the Georgia law mandatory assignment of benefit statue that require payment be mailed directly to the provider (*See* Georgia § 33-24-54). B.A. was mailed a check for $438.00 which was turned over to the provider. Blue Cross did not honor the UCR fee schedule and paid the employee claim to the equivalent of a state Medicaid beneficiary, not private insurance. The provider is owed an additional payment of $9, 562.88. **(Exhibit D- Explanation of Benefit and Copy of Check)**

48. On March 13, 2015 Plaintiff mailed a First Level Appeal to Blue Cross via Certified Particle No. 7014 0150 0000 2435 9807. A copy of the appeal was sent to Publix via Certified Particle No. 7014 0150 0000 2435 9364. **(Exhibit E- First Level Appeal without enclosures)**

49. The appeal requested a full and fair review because the explanation of benefit did not give a clear explanation. Additionally, the appeal letter requested:

1. **Identification of Plan Administrator of this employee benefit plan, including name, telephone number and postal mailing address; and if such plan administrator retained discretionary authority or control over the plan operation, if not, identification of any de facto plan administrator/fiduciary with designated or delegated discretionary authority;**

2. **Identification of Appropriate Named Fiduciary, Insurer designated to review benefits denials and make decisions on review (appeal), including specific name, telephone number and postal mailing address; and how such insurer obtained discretionary authority or control over plan operation;**

3. **In case of a Third Party Claim Administrator (TPA) without discretionary authority and with nonfiduciary status, provide a complete copy of plan document with unambiguous definitions and provisions of discretionary authority designation and specific ministerial duties authorized and specified for TPA.**

4. **Identifications of any fiduciaries designated in SPD or non-fiduciaries delegated by this plan administrator or insurer who makes benefits determination, medical determination and mixed medical and benefits eligibility determination, including names, telephone numbers and postal mailing addresses.**

5. **Complete copy of Summary Plan Description (SPD) of this plan (not just selected pages), please specify reference to the pertinent plan provisions on which the denial is based and clarify if this SPD provided upon this request is final and complete controlling and governing plan document;**

6. **AND If SPD provided is not final and complete legal controlling or governing document for this plan, please provide a complete copy of your controlling and governing legal documents for this plan, with specific provisions and limitations of coverage, assignment and ERISA rights, including but not limited to any official copy of Medical Plan Document, Master Copy of Group Insurance Policy, Group Insurance Certificates and Riders, *upon which this plan is maintained and operated, and your denial decisions are based.* Please explain and clarify which document is final and legal controlling and governing document and why. Equitable estoppel doctrine and detrimental reliance of SPD or legal control documents will preclude you from using these documents in defending your denial decision should judicial review become inevitable after you refused to make**

**such disclosure of any ERISA controlling legal documents but relied upon such documents in making your denial decisions.**

7. **Appeal (claims review) procedures established and maintained for this plan as required by ERISA;**
8. **Claim review guidelines, including Surgical claims guidelines;**
9. **Publications, database and schedules used to determine your Usual, Customary and Reasonable Charges for this plan in accordance with DOL Advisory Opinion, 96-14A;**
10. **A copy of the administrative service agreement for 2014 between Publix and Blue Cross Blue Shield.**

50.     The First Level Appeal enclosures included a second copy of the written assignment of benefit and a second copy of  Blue Cross *specific* designated authorized representative form.

51.     The certified appeal also included a summary plan description request form to be completed by Blue Cross with a request to forward the request to the appropriate party if they did not have the information.  For example, the letter stated that

This appeal is filed with the Plan administrator of the above captioned plan, or appropriate named fiduciary or insurer or the plan. Any individual who is not designated as the plan administrator or appropriate named fiduciary by this plan is required, by ERISA and as your fiduciary duty, to forward this legal document to such appropriate individual.

52.     Additionally, the certified appeal included a copy of the assignment of benefits and rights which emphasized to Blue Cross that the plan administrator would be liable for statutory penalties. The letter specifically stated:

Faced with the possibility of $110 a day in penalties under 1132(c)(1)(B), a rational plan administrator or fiduciary would likely opt to provide a

claimant with the information requested if there is any doubt as to whether the claimant is a "participant" especially when the reasonable cost of producing the information can be recovered. See 29 CFR 2520.104b-30(b)(1987)" (U.S. Supreme Court, *Firestone Tire & Rubber Co. v Bruch*, 489 U.S. 101 (1989).....A copy of the legal assignment of benefits from the participant of this plan under ERISA is enclosed to satisfy ERISA legal and derivative standing requirements.

53.    The Level One Appeal letter also warned Publix  that if the plan

contained any anti-assignment clauses, those clauses would not be

enforceable unless Plaintiff was notified of such clauses. The appeal letter

specifically stated:

Should this ERISA plan contain unambiguous anti-assignment clause prohibiting assignment of rights, benefits, and causes of action in the SPD, the plan administrator is required to timely notify or disclose to the assignee of such prohibitions by disclosing the SPD, especially on this appeal process, to avoid judicial unenforceability of your anti-assignment clause on judicial process...

54. Plaintiff did not hear a peep from Blue Cross or Publix. The First Level

Appeal was ignored and NONE of the requested plan documents were

received. ERISA claims regulations require that the Publix  establish and

maintain reasonable claims procedures. 29 C.F.R. § 2560.503-1. At a

minimum, a reasonable claims procedure must be described in the summary

plan description, and must not be administered in a manner that unduly

inhibits or hampers the filing or processing of claims. Pursuant to a "written

request," plan procedures must allow claimants to "review pertinent documents" and "submit issues and comments in writing." It was clear that fiduciaries had no clue about ERISA. Plaintiff did not bother to follow up on the appeal because the law deems this internal appeals process to be flawed, wrong and exhausted. The summary plan description is 394 late as of the filing of this lawsuit. Plaintiff requests $43, 340.00 in statutory penalties.

55. Patient R.N. presented to Plaintiff on September 6, 2013 for medical services. The claim was mailed via Certified Particle No. <u>7012 3050 0002 0475 0374</u> with a copy of the written assignment of benefit. The claim totaled $1924.02 based upon the UCR for the geographic area.

56. Blue Cross processed the claim and ignored the member's direct payment request to the provider. The member was paid $301.00 and the check was turned over to the provider. An additional benefit payment of $492.00 is owed to the provider. Blue Cross low-balled the claim by not honoring the UCR fee schedule for the plan allowable.

57. In good faith, Plaintiff submitted a First Level Appeal dated 11-28-2013 via Certified Particle No. <u>7012 3050 0002 0475 1883</u> and received by Blue

Cross on December 2, 2013.   The appeal letter requested a full and fair

review. In order to facilitate the review, Plaintiff requested several

documents included a copy of the summary plan description and a complete

copy of the employee benefit contract. Additionally, the appeal warned

Publix's agent   that if the plan contained any anti-assignment clauses, those

clauses would not be enforceable unless Plaintiff was notified of such

clauses. This First Level Appeal was identical to the one for patient B.A.


58. On January 29, 2014 Plaintiff received  a letter from Blue Cross dated

January 25, 2014. The contents stated as follows:

This claim processed with the patient home plan directly. They allowed
$1101.84. $301.00 was paid. Please contact Home plan directly for complete
details.

**Exibit F- Appeal Response Letter Dated 1-25-2014 from Blue Cross**

59. The three-liner response was Blue Cross' version of a full and fair

review. None of the requested plan documents were received.


60. On February 3, 2014 Plaintiff submitted a Second Level Appeal to

Blue Cross. The appeal was received on February 11, 2014. It

incorporated the same talking points outlined in the First Level

Appeal (e.g. SPD request, inquires as to whether or not the plan had anti-assignment provisions, ect). **Exhibit G- Copy of Second Level Appeal & DOL Advisory Opinions**

61. On March 13, 2014 Plaintiff received a letter dated March 10, 2014 from Publix's agent that gave a generic, blanket denial that did not meet the criteria for a full and fair review. There was no mention of the requested plan documents. It was clear that Blue Cross was not qualified to execute ERISA full and fair review requirements. **Exhibit H- Copy of Blue Cross Denial Letter Dated March 10, 2014.**

62. The summary plan description is 1632 late as of the filing of this lawsuit. Plaintiff requests $179,520.00 in statutory penalties

61. Patient M.F. presented for medical services on April 25, 2013. The total UCR charges totaled $3, 346.54. The claim was submitted to Blue Cross along with a copy of the written assignment of benefit. The claim processed and Blue Cross only allowed 20 percent of the charges. The member was sent a check for $86.41 even though Blue Cross was instructed

to mail the designated authorized representative the payment. The provider is owed an additional payment totaled $ 1, 561. 74.

62. Plaintiff submitted a First Level Appeal and a Second Level Appeal to Blue Cross; However, a full and fair review was never honored. Blue Cross sent a scant generic responses similar to patient R.N.

63. On September 29, 2014  patient A.G. presented to Plaintiff's office surgical services. The total UCR charges totaled $7, 682.00. The claim was sent via Certified Particle No. 7014 0150 0000 2435 7438 and received October 3, 2014 by Blue Cross.

64. Three months passed and Blue Cross failed to process the claim. Therefore, on January 2, 2015 Plaintiff sent a letter to Publix headquarters to advise them that Blue Cross breached contractual obligations to process claims. The letter was sent Fed Ex  2nd Day Mail (Tracking Number 8033 9345 3310). **Exhibit I- Copy of Letter Dated January 2, 2015.**

65. On March 2, 2015 Plaintiff called Blue Cross at 1800-628-3988 to check the claim status. Plaintiff was advised that BCBS of South Carolina processed the claim and a check for $723.33 was mailed to the member. Blue Cross violated Georgia State mandatory assignment of benefit statue § 33-24-54 and  did not honor the member's request that payment be mailed directly to the provider. (Reference # 02150610193700  3/3/2015).

66. After contacting the member several times, Plaintiff never received the check. Additionally, patient A.G. stated that she never received the payment. It is assumed that the check was lost in the mail. Nevertheless, Plaintiff is owed $4, 957.40.

67. On March 2, 2015 Plaintiff submitted a First Level Appeal to Blue Cross. The appeal was sent via Certified Particle No. <u>7014 0150 0000 2435 9739.</u> The appeal included plan document request including SPD, a copy of the written assignment of benefit, and a copy of the Blue Cross specific authorized representative consent. **( Exhibit J- Copy of First Level Appeal)**

68. Plaintiff did not hear a peep from Blue Cross. The First Level Appeal was ignored and NONE of the requested plan documents were received. ERISA claims regulations require that the Publix  establish and maintain reasonable claims procedures.  29 C.F.R. § 2560.503-1.  At a minimum, a reasonable claims procedure must be described in the summary plan description, and must not be administered in a manner that unduly inhibits or hampers the filing or processing of claims. Pursuant to a "written request," plan procedures must allow claimants to "review pertinent documents" and "submit issues and comments in writing." It was clear that Publix, through their agents, had no clue about ERISA. Plaintiff did not bother to follow up on the appeal because the law deems this internal appeals process to be

flawed, wrong and exhausted. The summary plan description is 408 days late as of the filing of this lawsuit. Plaintiff requests $44, 880.00 in statutory penalties.

## VI.   CLAIMS FOR RELIEF

### COUNT ONE

**ENFORCEMENT UNDER 29 U.S.C.§ 1132(a) (1)(B) FOR FAILURE TO PAY ERISA PLAN BENEFITS**

69.    Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth at length herein.

70.    Publix has failed to fully pay or compensate Plaintiff's claims for treatments rendered to members of the relevant ERISA plan.  Defendants have failed to pay/reimburse the Plaintiff under the ERISA Plan in accordance with the UCR standard on each of the claims at issue in this litigation.

71.    Defendant breached the ERISA Plans' benefit provision by underpricing and underpaying Plaintiff for out-of-network services provided by Plaintiff to the member  covered under the ERISA Plan.

72.   This cause of action seeks to recover benefits, enforce rights and clarify

rights benefits under 29 U.S.C.§1132(a) 1(B).

73.    Defendant has intentionally miscalculated the UCR rate, systematically reduced benefits paid to Plaintiff for out-of-network services, as well as failed to provide a benefit determination and appeal process that provides for a full and meaningful review of the benefit claims and determinations.

74.    The aforementioned statute authorizes actions against ERISA Plans administrators.

75.    Therefore the named Defendant is proper for this claim.  For said violations, Plaintiff is entitled to past due benefits and future benefits.

## COUNT TWO

**DEFENDANTS FAILED TO PROVIDE PRODUCTION OF  DOCUMENTS UNDER 29**
**U.S.C. §§ 1024(b), 1104, AND 1133(2), AND FOR STATUTORY PENALTIES UNDER 29**
**U.S.C. §1132 (c)(1)**

76.    Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth at length herein.

77.    Pursuant to U.S.C.§§ 1024(b), 1104, and 1133(2), Defendant has failed to produce the "summary plan description… or other instruments under

which the plan is established or operated."

78.     Section 502(c)(1) of ERISA imposes a fine of up to $110 per day upon a plan administrator who "fails or refuses to comply with a request for any information which the administrator is required by this subchapter to furnish to a participant or beneficiary." *29 U.S.C.§1132(c)(1), §1133*

79.     Wherefore, the Plaintiff requests that Defendant produce the requested documents and the Court impose a fine up to $110 per day for each day Defendant failed to provide the requested documents.     Publix violated its fiduciary duty by instructing Plaintiff to request appeal documents from a claims administrator that lacked basic fiduciary traits and failed to provide the full and fair review that was promised in the plan documents.

## COUNT THREE

### ENFORCEMENT UNDER 29 U.S.C. §1105(a)(2) FOR LIABILITY FOR BREACH OF CO-FIDUCIARY

80.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth at length herein.

81.     Publix failed to comply with Section 404 (a) in the administration of the duties (i.e. failed to monitor Blue Cross, failed instruct other plan

fiduciaries to provide or forward plan document request, failed to provide a

direct route for provider assignee to obtain the plan documents, failed to hire

a good vendor to provide a full and fair review under ERISA).

82.    In this context, Publix is liable for any related statutory award related

to count two.

   **WHEREFORE**, Plaintiff prays for and demands judgment against the
Defendant as set forth above and as follows:

   A.       For Defendant to be found  liable;

   B.       For a declaration that Plaintiff  is entitled to have Publix
            instruct

   C.       benefit agents to calculate UCR based on the  ERISA plan

   D.       For damages in the amount of $16, 568.02 for unpaid services,
            and

   E.       $267,740.00 in penalties to date, pursuant to Section 502(c)(1)
            of

   F.       ERISA;

   G.       For interest  at the applicable legal rate;

   H.       For filing fees and cost;

This 16th day of May , 2016

W. A. Griffin, MD
Pro Se
550 Peachtree Street N.E. Suite 1490
Atlanta, Georgia 30308
(404) 523-4223